BRUSH ELECTRIC CO. et al. v. ACCUMULATOR CO.

(Circuit Court, D. New Jersey. January 19, 1893.)

1. PATENT FOR INVENTIONS—INFRINGEMENT—INJUNCTION—CONTEMPT.
    An injunction having issued restraining defendant from making any secondary or storage batteries embodying the invention covered by letters patent Nos. 266,090 and 337,299, issued, respectively, October 17, 1882, and March 2, 1886, to Charles F. Brush, defendant subsequently, after a full hearing, procured, upon certain conditions, a modification thereof, allowing it to supply to a certain street-railway company, with whom it had a contract, certain batteries required by that company in renewal of batteries already furnished, which were of a size and form that complainants could not supply. In procuring this order, defendant produced in court its contract with the said railway company, which provided that defendant should for three years supervise the operation of the electrical equipment supplied by it, and for this purpose should furnish and pay the salary of a supervising electrician, who should have general charge of the operation of the storage batteries in the company's cars. Held that, although the order of modification merely permitted defendant to "supply" such batteries, it must be construed to also permit defendant to supervise their operation according to the contract, and defendant was not guilty of contempt in so doing.

**2. SAME.**

> The injury to complainants arising from the order of modification sprang from the permission to furnish the storage batteries, and no additional pecuniary damage was caused by simply allowing it to supervise the operation thereof, after having installed them under permission of the court; and hence complainants had no special ground of complaint in that respect.

In Equity.   Bill by the Brush Electric Company and others against the Accumulator Company for infringement of a patent.   An injunction pendente lite was heretofore granted on the authority of the decision of Judge Coxe in the circuit court for the southern district of New York, in Brush Electric Co. v. Electrical Accumulator Co., 47 Fed. Rep. 48.   The cause is now heard on motion to attach defendant as for a contempt in violating the injunction.   Denied.

W. H. Kenyon, for the motion.
F. H. Betts, opposed.

GREEN, District Judge.   This is a motion on behalf of the complainants, to attach the defendant as for a contempt for the alleged violation of a certain restraining order and a preliminary injunction heretofore granted by this court.   The bill of complaint was filed in this cause to restrain the alleged infringement of certain letters patent granted to Charles F. Brush, dated October 17, 1882, and March 2, 1886, and numbered, respectively, 266,090 and 337,299.   These letters patent had been adjudged to be valid by the circuit court of the United States for the southern district of New York, (Brush Electric Co. v. Electrical Accumulator Co., 47 Fed. Rep. 48,) and upon presentation to this court of the record in that case, and it appearing that the matters and facts therein set forth were in all things identical with the matters set up in the present bill of complaint, an order was granted by this court upon the defendant, on the 11th day of December, 1891, requiring it to show cause why an injunction pendente lite should not issue, pursuant to the prayer of the bill; and it was also ordered, at the same time, that, until the hearing of that order to show cause, the defendant should be restrained and prohibited from "directly or indirectly making, using, preparing, selling, or disposing of any secondary or storage batteries embodying the inventions alleged to be secured to Mr. Brush by the letters patent in the case."

Upon the hearing of said order to show cause, and after argument by counsel for both parties, it was adjudged that an injunction pendente lite should issue against said defendant, and consequently, on March 19, 1892, a formal writ of injunction was issued, strictly—

"Commanding and enjoining the said defendant, its officers, associates, clerks, attorneys, solicitors, agents, and servants, and all persons claiming or holding under or through it, to desist and refrain from directly or indirectly making, using, preparing, selling, or disposing of any secondary or storage batteries embodying the inventions, or either of them, covered in or by claims 1, 2, 3, 6, 7, and 12 of letters patent of the United States granted to Charles F. Brush, March 2, 1886, and numbered 337,299, or in or by claims 7 and 14 of letters patent granted to said Brush dated October 17, 1882, and numbered 266,090, or from any construction, sale, or use, in any manner, of any improvement in processes for making secondary batteries and secondary battery

elements described or claimed in any or either of the above-recited claims of either of said letters patent."

This writ of injunction was duly served on the defendant, as appears by the proofs submitted on this motion, on March 21, 1892. At the time of the making of the order to show cause and the granting of the injunction pendente lite, the defendant company was under contract with certain street-railway companies to furnish to them storage batteries of its manufacture for the operation of their various railway systems. It should be stated that an appeal had been taken by the defendant from the judgment and decree of the United States circuit court for the southern district of New York, sustaining the letters patent of the complainant, to the circuit court of appeals for the second judicial circuit, which appeal, at the time of the filing of the bill of complaint in this court, and at the time of the making of the restraining order and the granting of the preliminary injunction, was still pending and undetermined. It is an admitted fact that the life of a storage battery in constant use is quite limited, and there must be constant renewals, either of the battery itself as a complete structure, or of the elements which enter into its construction, that it may be productive of the best results. The contracting customers of the defendant company were therefore making constant demands upon the defendant to repair the storage batteries which they had originally obtained from it, or to furnish new batteries necessary for the continuance of the motive power upon their respective railways. At that time, also, it is admitted, the storage battery made by the defendant, and which has been adjudged to be an infringement of the complainants' battery, was somewhat different in form and size, so that the elements of the battery of the complainants could not be substituted readily or easily for the elements of the defendant's battery; and it followed, as a consequence, that as the defendant and the complainants were the only corporations in the United States manufacturing storage batteries, if the complainants could not immediately and promptly furnish to the defendants' customers the various elements of a storage battery in such form and shape as to be substituted for and be immediately installed in the place of the storage batteries then being used, the operation of the various companies using the defendant's storage batteries must necessarily cease, for a time at least.

Under these circumstances the defendant applied to this court on December 16, 1891, for a modification of the restraining order referred to, and after argument by the counsel, and in view of these facts, the restraining order theretofore made was modified so as to permit the defendant corporation, until the further order of this court, to supply the customers with whom it had contracts, express or implied, with batteries of the character and kind which had been adjudged to be infringements, upon the condition, however, that they should file a bond with the clerk of this court, in the penal sum of $10,000, as security for the payment to the complainants of any profits or damages that they should be entitled to recover hereafter by reason of such supply, if the decree of the circuit court should be affirmed by the circuit court of appeals. The principal customers to

whom these batteries were to be supplied was a railway company in Detroit, Mich., and one in Washington city, D. C. After the issuing of the preliminary injunction on May 13, 1892, the defendant corporation again made application to this court for a modification of that writ, under circumstances very similar to those under which the modifications of the restraining order had been previously made: That the Washington Railway Company, known as the "Eckington & Soldiers' Home Railway Company," were in immediate and pressing need of certain elements, more than 1,500 in number, of the storage batteries which were in use, or had been in use, upon the cars of that company, and which the complainants had been and were unable to furnish, their type of battery being somewhat different in structure; that, unless the said elements were furnished immediately, the operation of the railroad must cease, because by the charter of that railroad company neither horses nor the overhead electric system could be used for motive power. After the arguments of counsel, and a full presentation of the necessities and demands which called for and seemed to justify a modification of the preliminary injunction, and chiefly for the two reasons that the citizens of Washington would suffer the greatest possible inconvenience from the stoppage of the road, and the court of appeals had not yet affirmed the decree of the lower court, the injunction was modified so as to permit the defendant to supply, either from stock on hand, or by manufacturing, "1,584 positive piles for storage batteries, of a type known as '23 M. G.,' to the Eckington & Soldiers' Home Railway Company of Washington, D. C., in renewal of positive piles heretofore furnished to said railway company by the said Accumulator Company; upon the express condition, however, that the said Accumulator Company do pay, or cause to be paid, into this court, before the delivery of said piles or any of them, a sum of money in cash equal to a royalty of three cents per pound of said piles,"—which money was to be held for the benefit of the complainants.

Upon the modification of the restraining order and of the preliminary injunction, the storage batteries were furnished under the contracts which the defendant company had with the respective railway companies, and the conditions upon which the modifications were made fully complied with by it. The complainants now allege that the defendant corporation, or its officers or agents, have knowingly and willfully violated the restraining order and the writ of injunction, and have done acts which they were restrained and prohibited from doing, willfully, and in express disregard of the order of this court. The acts complained of, and of which it is alleged the defendant corporation has been guilty, consist, generally speaking, in its continued general supervision of the preparation, use, and operation of the storage batteries as furnished by it to the Eckington & Soldiers' Home Railway Company, both in respect to the installation of the said batteries, as well as their operation after the installation; and they insist that by the very language of the injunction, as well as of the restraining order, the defendant was prohibited from directly or indirectly making, using, preparing, selling, or disposing of any secondary or storage batteries to anyone; that the modification simply

permitted the defendant to sell or furnish, and did not permit it to use or to supervise the use, yet this use and this supervision of use were acts of which the defendant was admittedly guilty.

Beyond question, if the restraining order and the preliminary injunction are to be construed strictly, and the respective modifications construed with equal strictness, the defendant may be said to have been guilty of a technical violation of both. It is not disputed that the defendant's agents and servants have supervised the preparation, installation, and operation of the storage batteries furnished to the railway company mentioned; but under the circumstances of the case, as presented to the court, it is not conceived that the modification of the injunction should be so strictly and literally construed as to limit it as contended. At the time of the application for the several modifications, there was presented to the court for inspection the original contract between the Eckington Railway Company and the defendant. By that contract the defendant was to equip a certain number of cars with storage batteries sufficient to operate them for a given distance at a certain rate of speed. The electrical energy with which said batteries were to be charged was to be furnished, and the conductors and motormen upon the cars were to be employed and paid, by the railway company; but the defendant company was to supervise the operation of the electrical equipment to be supplied by it for a period not exceeding three years from the date of the contract, January 23, 1891; and, that it might efficiently perform this part of the contract, it was to furnish and pay the salary of a supervising electrician or superintendent, who should have the general charge and direction of the operation and use of the respective storage batteries, and whose orders as to the use and operation of the batteries were to be fully obeyed by the employes of the railway company. There were also provisions in the contract which raised a question as to the title to the storage batteries furnished,—whether it passed to the railway company, or was retained for a specified time by the defendant company. Now, it was after the inspection and consideration of this contract by the court, and for the reasons, inter alia, that the continued operation of the street railway depended upon the immediate performance of it by the defendant company, that the several modifications in the enjoining order and writ of injunction were made. Those modifications were intended to give to the defendant company the right to furnish the infringing storage batteries to the Eckington Railway Company under the contract in question, and upon the express condition that the satisfaction of all pecuniary damages which the complainants might show themselves to be entitled to thereafter, arising from the furnishing of said batteries in question, should be first provided for. The application to the court was for permission to furnish storage batteries under the contract in the case. The contract was exhibited to the court to advise the court of its terms. The only inference to be drawn was that the batteries, when furnished, were to be used in compliance with and under the conditions of that contract. It was so understood by the court at the time the modification was made. While, therefore, the words in which the modification was made apparently limit the privilege of the

defendant corporation to the furnishing of the storage batteries solely, it was intended by the court, and should have been understood, that these batteries, when furnished, were to be used under the conditions of and in the way stipulated by the contract. The modification meant, if it meant anything at all, that the defendant corporation could furnish the needed elements of the batteries to the Eckington Company, in a limited number, to be installed upon the cars of the Eckington Company for motive power, and to be used and operated under the terms and conditions of the contract, in compliance with which the defendant company was permitted to furnish them. No other construction ought to be put upon the action of the court. Simply to permit the defendant corporation to supply the Eckington Company with storage batteries would have carried with it no benefit to the traveling public, whose interests were being considered by the court; for the operation of the cars of the Eckington Company by those storage batteries when furnished depended, to a certain extent at least, upon the supervision of their use and operation by the electrical supervisor furnished by the defendant company. It is no answer to this to assert that, if the defendant company had not supplied the supervisor necessary for the successful operation of the storage battery, the Eckington Company would have been driven to obtain that supervision and assistance in the operation of their road from the complainants, at a pecuniary benefit to said complainants. Non constat that the complainants would have been willing to supervise the defendant's batteries. Had they refused, the inconvenience to the public, which the court was endeavoring to lessen, would have been intensified. The fair construction of the modification is that by it the defendant company was permitted to furnish the storage batteries in question to the Eckington Company under the terms and conditions of the contract which it exhibited in court with that company. As the acts alleged by the complainants as acts violative of the injunction are only such as the contract called for on the part of the defendant company, it is neither fair nor equitable to adjudge it guilty of willfully violating the injunction or enjoining order by their performance.

Besides, it is perfectly clear that the injury arising from the modification, and sustained by the complainants, springs out of the permission to furnish the storage batteries. The complainants' letters patent cover and protect the construction of a certain storage battery. No one has the right to make a similar, or substantially the same, battery as that protected by those letters patent. To make and sell and dispose of such similar, or substantially similar, battery is a violation of the complainants' right. Simply to supervise and attend to the operation of such storage battery, after the court has permitted it to be installed, inflicts upon the complainants no additional pecuniary damage. Hence they have no special ground for complaints in the premises. The motion for attachment is denied.